1 | Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
2 | Andrew Daniel Weaver, Esq. (S.B. #318935)
**SCOTT COLE & ASSOCIATES, APC**
3 | 555 12th Street, Suite 1725
Oakland, California 94607
4 | Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
5 | Email:   scole@scalaw.com
Email:   lvannote@scalaw.com
6 | Email:   aweaver@scalaw.com
Web:    www.scalaw.com
7 |
Attorneys for Representative Plaintiff
8 | and the Plaintiff Classes

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE BOGOSIAN CHOSE, individually, and on behalf of all others similarly situated, | **Case No. 4:19-cv-06174-KAW**<br><br>**CLASS ACTION** |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION** |
| vs. | |
| ACCOR HOTELS & RESORTS (MARYLAND) LLC, and DOES 1 through 100, inclusive, | |
| Defendants. | **[JURY TRIAL DEMANDED]** |

Representative Plaintiff alleges as follows:

## INTRODUCTION

1.    Even beyond the 26.0% of adults who already suffer from asthma, or the 21.2% of adults who suffer from chemical sensitivity/multiple chemical sensitivity, there is rapidly-growing concern of the harmful—often disabling—effects of exposure to fragranced products. For particularly susceptible segments of the population (e.g., persons with autism), the disabling

effects have been **found in over three out of four persons**. Regardless of susceptibility, 53.1% of Americans support fragrance-free policies for workplaces, 60.7% would choose a hotel without fragranced air and nearly everyone is aware of the health problems and annoyance associated with unwelcome fragrances in eating establishments, on airplanes, in hotel rooms and in other places of public accommodation.

2.      During the class period, and despite knowledge of these realities, Claremont Club & Spa in Berkeley, California ("Claremont") offered lodging, restaurants and bar service, and spa and club facilities to the general public but then flooded its lobby with dangerous fragrance, showering unsuspecting guests/patrons with substances known to cause respiratory problems, headaches, skin irritation, and gastrointestinal, cardiovascular and cognitive problems.

3.      Indeed, 34.7% of Americans report adverse health effects when exposed to fragranced consumer products[1] such as those piped in through Claremont's HVAC system, and it should come as no surprise: studies show that over 95% of chemicals found in most fragrances derive from petrochemicals including benzene derivatives, aldehydes and phthalates—all of which are highly toxic—the latter being a known endocrine disruptor[2] and the others potential carcinogens. Studies also teach that fragranced products can emit hundreds of different volatile organic compounds (VOCs), some as primary pollutants, and others that react with the ambient air to generate secondary pollutants such as formaldehyde and acetaldehyde[3] (both compounds considered potentially toxic or hazardous under federal law as well as California's "Proposition 65" (the Safe Drinking Water and Toxic Enforcement Act of 1986; California Health & Safety Code §§ 25249.5, et seq.).

4.      According to one survey, roughly a dozen compounds commonly found in fragrances appear on The Office of Environmental Health Hazard Assessment's Proposition 65

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

---

[1]  While beyond the scope of damages sought herein, it's worthy to note that numerous sources link fragrances to the onset of asthma symptoms (see, https://www.ewg.org/news-and-analysis/2017/12/avoiding-common-household-asthma-triggers).

[2]  According to one environmental organization, about 75% of all products containing 'fragrance' contain phthalates, which are particularly dangerous for women of childbearing age, with endocrine disruption leading to birth defects or developmental disorders.

[3]  Acetaldehyde, which can be both a primary and secondary emission from air fresheners and air dispersion units, is associated with both acute and chronic hazards to the respiratory system and is classified as a carcinogenic hazardous air pollutant in this nation.

Carcinogens and Reproductive Toxicants list.[4] Another survey revealed that 54 compounds commonly found in fragrances appeared on the California Department of Toxic Substances Control Candidate Chemical List.[5] The United States Environmental Protection Agency has further concluded that some compounds commonly found in fragrances (e.g., synthetic musks) were "toxicologically significant." Synthetic fragrance compounds, in particular, are extremely pervasive, lodging themselves not only in the bloodstream but also in breast milk and fat-storing tissue. When fragrances hit the air, they break down, mix with other pollutants and form new compounds—ones often more irritating and allergenic than the original fragrance.

5.     For branding and/or other business purposes calculated to maximize revenue and profitability, Claremont exposed tens of thousands of individuals to these pollutants during the class period, without warning, and without ample regard to the short term, long term and/or discriminatory impact upon disabled persons of its reckless conduct.

6.     This action is brought to redress and end this prolonged pattern of unlawful conduct once and for all. Representative Plaintiff, therefore, brings this action on behalf of herself as well as on behalf of California classes of all persons harmed by the toxic doses of fragrance at Claremont Club & Spa in Berkeley, California (through its owner/operator, defendant Accor Hotels & Resorts, LLC (hereinafter "Accor" or, in tandem with its Doe defendants, "Defendants") at any time during, at least, the "limitations period," as identified below.

7.     Representative Plaintiff, on behalf of herself and members of the respective classes (hereinafter "class members" in one or more of the classes identified herein) seeks damages, interest thereon, restitution, injunctive and other equitable relief, reasonable attorneys' fees and costs and disgorgement of all benefits Defendants enjoyed from their numerous unfair, unlawful and deceptive business practices, as detailed herein, which run afoul of a multitude of California state laws, including unfair competition laws.

8.     Representative Plaintiff asserts that, during the limitations period defined below, Claremont had, and continues to have, a consistent policy of releasing fragrance compounds upon

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

---

[4]   https://oehha.ca.gov/proposition-65/proposition-65-list
[5]   http://www.womensvoices.org/2015/12/10/toxic-chemicals-found-in-fragrance/

individuals as they traverse the Claremont's front entrance. Indeed, by the time these unsuspecting guests/patrons are aware of the pervasive scents/toxins, it's simply too late; for those with recognized disabilities such as fragrance/chemical/multiple chemical sensitivities, autism, etc., the fear, apprehension and emotional distress can be intense, not to mention the physiological manifestations predictably attendant to the exposure. Even for those persons lucky enough to not share this level of susceptibility, the exposure remains, at best, an annoyance, an unwanted touching (battery) and/or a disruption to their culinary and other hoped-for experiences at the Claremont. Indeed, the scents/toxins with which Defendants pollute the Claremont entry-way can be detected far across the hotel, in restrooms, in dining and bar areas and in the Claremont's conference facilities.

9. For the class allegations, the "limitations" period is designated as the time from August 28, 2015 through trial, based upon the allegation that the violations, as described more fully below, have been ongoing throughout that time.

10. Despite actual knowledge of these facts and legal mandates, Defendants have and continue to enjoy an advantage over their competition and a resultant disadvantage to class members.

11. Representative Plaintiff is informed and believes and, based thereon, alleges that Defendants' officers knew of these facts and legal mandates yet, nonetheless, repeatedly authorized and/or ratified the violation of the laws cited herein.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the Representative Plaintiff's and class members' claims for damages and penalties, and for attorneys' fees (under, *inter alia*, California Code of Civil Procedure § 1021.5), and for claims for injunctive relief and restitution of ill-gotten benefits arising from Defendant's unfair, unlawful and deceptive practices (under California Business & Professions Code § 17200, et seq.).

13. Venue as to Defendants is proper in this judicial district pursuant to California Code of Civil Procedure § 395(a). Defendants owned and operated a hotel within the County of Alameda

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

1    (where Representative Plaintiff and numerous class members visited), transacted business, had

2    agents, and was otherwise within this Court's jurisdiction for purposes of service of process. The

3    unlawful acts alleged herein have and have had a direct effect on Representative Plaintiff and those

4    similarly situated within the State of California and within the County of Alameda.

5

6                                    **REPRESENTATIVE PLAINTIFF**

7         14.    Representative Plaintiff Michelle Bogosian Chose is a natural person who visited

8    and/or patronized Claremont Club & Spa and was exposed to and damaged by chemical substances

9    (including carcinogenic and/or other hazardous air pollutants, and particulate matter) as a result of

10   the exposure during the class period.

11        15.    Plaintiff suffers from fragrance and chemical sensitivities and, when exposed to

12   fragrances, is substantially limited in her ability to breathe. Consequently, Plaintiff is "physically

13   disabled," as defined by all applicable California and United States laws, and a member of the

14   public whose rights are protected by these laws.

15        16.    Generally, when Representative Plaintiff (and her fellow class members) are

16   exposed to fragrances, she/they experience symptoms such as respiratory problems, headaches,

17   skin irritation, and gastrointestinal, cardiovascular and cognitive problems. As a result,

18   Representative Plaintiff and many class members seek to avoid certain public areas and cannot sit

19   in proximity to others wearing fragrances. Representative and many class members will also avoid,

20   in most instances, business establishments where fragrances are used.

21        17.    As used throughout this Complaint, the terms "Plaintiff classes" and/or "class

22   members" refers to the named Plaintiff as well as each and every person eligible for membership

23   in one or more of the sub-classes, as described and defined below.

24        18.    The Plaintiff classes consist of all members who have visited and/or patronized

25   Claremont Club & Spa and been exposed, in some way, to chemical substances (including

26   carcinogenic and/or other hazardous air pollutants, and particulate matter) as a result of the release

27   of said chemical substances by Defendants, and each of them.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

19.    The degree, if any, to which class members were affected by the conduct of Defendants and/or were eligible to recover damages and penalties therefor is subject to further proof and or statistical analysis to be performed at a later stage in the litigation.

20.    At all times herein relevant, the Representative Plaintiff was and now is a person within each of the classes of persons described and defined herein. The Representative Plaintiff brings this action on behalf of herself and as a class action pursuant to California Code of Civil Procedure §382, on behalf of all persons or entities similarly situated and proximately damaged by the toxic chemical compounds and/or particulate matter discharge described herein.

## **DEFENDANTS**

21.    According to Defendant Accor's website,[6] Claremont Club & Spa ("A Fairmont Hotel") is a California landmark (opening in 1915) and one of America's most iconic hotels, offering 276 guest rooms and suites, three distinct restaurants, alcohol bars, a "Fairmont Spa" and club facilities for adults and children.

22.    Since its opening in 1915, Claremont has maintained it facilities in the City of Berkeley, County of Alameda in the State of California.

23.    In 2014, the Claremont hotel was acquired by Fairmont Hotels & Resorts (hereinafter "Fairmont"), a Toronto-based chain of 75 luxury hotels. In turn, the Fairmont hotel chain is owned by defendant Accor, a French hospitality company that owns, manages and franchises hotels, resorts and vacation properties.

24.    The Claremont is a facility open to the public, intended for non-residential use, and its operation affects commerce. The Claremont is therefore a public accommodation as defined by applicable state and federal laws.

25.    Those defendants identified as Does 1 through 100, inclusive, are and were, at all relevant times herein mentioned, officers, directors, supervisors, agents and/or employees of some/each of the remaining defendants and/or other business entities organized for the purpose of providing lodging, spa, restaurant and other services to the public.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

---

[6]    https://www.fairmont.com/claremont-berkeley/

26.    Representative Plaintiff is unaware of the true names and capacities of those defendants sued herein as Does 1 through 100, inclusive and, therefore, sues these defendants by such fictitious names. Representative Plaintiff will seek leave of court to amend this Complaint when such names are ascertained. Representative Plaintiff is informed and believes and, on that basis, alleges that each of the fictitiously-named defendants was responsible in some manner for, gave consent to, ratified, and/or authorized the conduct herein alleged and that the Representative Plaintiff's and class members' damages, as herein alleged, were proximately caused thereby.

27.    Representative Plaintiff is informed and believes and, on that basis, alleges that, at all relevant times herein mentioned, each of the defendants was the agent and/or employee of each of the remaining defendants and, in doing the acts herein alleged, was acting within the course and scope of such agency and/or employment.

## CLASS ACTION ALLEGATIONS

28.    Representative Plaintiff brings this action on behalf of herself and as a class action on behalf of all persons similarly situated and proximately damaged by Defendant's conduct including, but not necessarily limited to, the following Plaintiff classes:

**The Personal Injury Class:**
All persons who visited the Claremont Club & Spa between August 28, 2015 and the trial of this matter.

**The Injunctive Relief Class:**
All persons who visited the Claremont Club & Spa between August 28, 2015 and the trial of this matter and seek an order enjoining Defendants, and each of them, from releasing fragrances into the air at the Claremont Club & Spa.

**The Punitive Damages Class:**
All persons entitled to compensatory damages as a result of the misconduct of Defendants, and each of them, with respect to the release of toxic fragrance compounds and/or harmful particulate matter at the Claremont Club & Spa between August 28, 2015 and the trial of this matter.

29.    Defendants, their officers, directors, employees and subsidiaries are excluded from each of the Classes.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

30.    This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

a.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Class are so numerous that joinder of all members is impractical, if not impossible, insofar as Representative Plaintiff is informed and believes and, on that basis, alleges that there are sufficient class members to meet the numerosity requirement. Membership in the classes will be determined upon analysis of hotel lodging, restaurant, spa, club, conference room reservation, among other records maintained by Defendants.

b.    <u>Commonality</u>: The Representative Plaintiff and class members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual class members, including, but not necessarily limited to:

1)    Whether Defendants breached duties of care;

2)    Whether Defendants acted recklessly and/or willfully;

3)    Whether Defendants, by their misuse of hazardous substances in commercial quantities, are liable for damages and losses arising from the toxic releases;

4)    Whether Defendants' conduct constitutes a battery and, if so, was it welcomed;

5)    Whether Representative Plaintiff and/or class members are entitled to damages for economic injury, property losses, bodily injury, emotional distress, annoyance and/or inconvenience, among other damages and, if so, what is the appropriate means of calculating such monetary damages;

6)    What are the approximate concentrations of those toxic chemicals and amounts of particulate matter to which Representative Plaintiff and/or class members were exposed;

7)    What are the toxicological properties of the various chemical substances described herein and/or of their breakdown products;

8)    Whether Defendants, or any of them, violated California Business and Professions Code §§17200, *et seq*. by engaging in unfair, unlawful and/or fraudulent business practices;

9)    Whether Defendants, or any of them, were unjustly enriched by, *inter alia*, allowing/permitting use of toxic substances in their hotel facilities and/or engaging in practices which engender unfair competition and/or other practices which threaten interstate commerce;

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

10) Whether injunctive, corrective and/or declaratory relief and/or an accounting is appropriate;

11) Whether Defendants' conduct rises to the level sufficient to warrant an award of punitive damages.

c. <u>Typicality</u>: The Representative Plaintiff's claims are typical of the claims of class members. The Representative Plaintiff and class members sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

d. <u>Adequacy of Representation</u>: The Representative Plaintiff is an adequate representative of the plaintiff classes in that the Representative Plaintiff's claims are typical of those of class members and the Representative Plaintiff has the same interest in the litigation of this case as other class members. The Representative Plaintiff is committed to vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature. The Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to class members as a whole. The Representative Plaintiff anticipates no management difficulties in this litigation.

e. <u>Superiority of Class Action</u>: Since the damages suffered by individual class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for class members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought, or be required to be brought, by each individual class member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other class members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

**Fraudulent Concealment Tolling**

31.    All applicable statutes of limitations have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

32.    Instead of disclosing the toxic character of its hotel's common areas, or of its disregard in various other respects of federal and state law, Defendants falsely represented that their practices complied with federal and state standards governing the hotel and restaurant

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

industry and fair competition within interstate commerce, generally, and that it was a reputable business whose representations could be trusted.

33.    For all these reasons, all applicable statutes of limitations have been tolled by operation of the Fraudulent Concealment rule.

## COMMON FACTUAL ALLEGATIONS

### The Nature and Harm of Fragrances

34.    Contrary to popular belief, most exposure to hazardous pollutants that affect human health and well-being occurs indoors. A primary source of these indoor pollutants and exposures is fragranced consumer products.

35.    A "fragranced consumer product" (or "fragranced product") is a product that contains an added fragrance or that is largely comprised of fragrance. A single "fragrance" in a product may be a complex mixture of dozens of volatile compounds, most of which being derived from petrochemicals.

36.    Although waning in popularity in many contexts/environments, fragrances are still oft-used in hotels (particularly in older hotels, like the Claremont Club & Spa) to mask odors such as mold smells (occasionally, even the mold buildup in the HVAC ductwork itself) and to promote a signature scent.

37.    However, fragranced products emit hundreds of volatile organic compounds (VOCs) including asthmagens and hazardous air pollutants. Indeed, in analyses of fragranced products, using gas chromatography/mass spectrometry, the most commonly emitted compounds were toxic chiral terpenes (e.g., limonene, alpha-pinene, and beta-pinene). Comparing emissions from fragranced and fragrance-free versions of the same products proves this; chiral terpenes are detected in fragranced versions but not in fragrance-free versions. In addition to being primary pollutants, these terpenes react with ozone in the ambient air to generate secondary hazardous pollutants such as formaldehyde.

38.    Fragrance is a known respiratory irritant and neurological toxin and one in five people in the United States experience adverse health effects from synthetic fragrance exposure.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

The problem with fragrance products is not the scent itself but the properties of synthetic chemicals from which they are derived such as petroleum or coal tar. Almost one-third of the chemical additives used in perfume are known to be toxic—not a surprise since, over the past 50 years, 80-90% of fragrances have been synthesized from petroleum.

**Everyone is Susceptible to Harm from Unwelcome Fragrances**

39.    Various multi-nation studies have examined the prevalence of fragrance sensitivity and the results are staggering:

- 26.0% of adults are asthmatic and, according to at least one study, 57.8% of them reported adverse health effects from exposure to fragranced products, and 24.1% reported being further disabled (e.g., lost workdays and/or a job) thereby.[7] 31.6% of this sub-population report that they want to leave a business as quickly as possible after entering it if they smell air fresheners or a fragranced product, and 32.9% of them have been prevented from going someplace because they predict they would be exposed to a fragranced product that would make them sick;

- 21.2% of adults suffer from Chemical Sensitivity[8] and/or Multiple Chemical Sensitivity ("MSC"). According to at least one study, 81.3% of this vulnerable sub-population reported adverse health effects from exposure to fragranced products. Results also found that 28.6% of individuals with Chemical Sensitivity have lost workdays or a job, in the past year, due to exposure to fragranced products in the workplace;[9]

- 32.2% of adults suffer from Fragrance Sensitivity[10] with or without an asthma diagnosis;

- 4.5% of the population suffer from Autism/ASDs, of which 60.6% also report suffering from Chemical Sensitivity and 75.8% from Fragrance Sensitivity;

---

[7] https://www.law.cornell.edu/uscode/text/42/12102https://doi.org/10.1007/s11869-019-00693-w
[8] Chemical sensitivity is a medical condition characterized by adverse health effects from exposure to common chemical pollutants and products.
[9] https://link.springer.com/article/10.1007/s11869-019-00672-1
[10] "Fragrance sensitivity" is a health condition characterized by adverse effects from exposure to fragranced consumer products.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

1    • Asthma, Chemical Sensitivity, and Multiple Chemical Sensitivity are

2    considered disabilities for purposes of the Americans with Disabilities Act.[11]

3    40.    Exposure to fragrances can cause such symptoms as (a) migraine headaches, (b)

4    asthma attacks, (c) neurological problems (e.g., dizziness, seizures, head pain, fainting, loss of

5    coordination), (d) respiratory problems (e.g., difficulty breathing, coughing, shortness of breath),

6    (e) skin problems (e.g., rashes, hives, red skin, tingling skin, dermatitis),[12] (f) cognitive problems

7    (e.g., difficulties thinking, concentrating, confusion or remembering), (g) mucosal symptoms

8    (e.g., watery or red eyes, nasal congestion, sneezing), (h) immune system problems (e.g., swollen

9    lymph glands, fever, fatigue), (i) gastrointestinal problems (e.g., nausea, bloating, cramping,

10    diarrhea), (j) cardiovascular problems (e.g., fast or irregular heartbeat, jitteriness, chest

11    discomfort), and (k) musculoskeletal problems (e.g., muscle or joint pain, cramps, weakness).[13]

12    41.    Even for persons not experiencing noticeable physical reactions to fragrance

13    inhalation/contact, Claremont's guests/patrons experience an annoyance and an unwanted

14    touching (a.k.a., a Battery) from Defendants' fragranced compounds/particulates, emotional

15    distress, and loss of smell and taste (these latter effects being particularly frustrating for those class

16    members visiting and hoping to enjoy Defendants' restaurant facilities).

17

18    **Organizational Reactions to Fragrances**

19    42.    While still prevalent in some workplaces, restaurants, hotels and other public

20    accommodations, many organizations and governmental agencies are and have taken bold steps

21    toward eradicating toxic fragrances in their own workplaces, some even offering guidance to other

22    entities regarding how to follow suit.

23    43.    For example, the United States Department of Health & Human Services issued an

24    Indoor Environmental Quality Policy prohibiting fragranced products and fragrance-emitting

25    _____

26    [11]    42 U.S. Code § 12102 (https://www.law.cornell.edu/uscode/text/42/12102)
       [12]    According to the American Academy of Dermatology (AAD), fragrances are considered the leading cause of

27    cosmetic        contact dermatitis        (https://www.webmd.com/allergies/features/fragrance-allergies-a-sensory-
       assault#1). As a health problem, fragrance sensitivity affects millions of people, and studies suggest that
       sensitivity is on the rise. Moreover, fragrances were named "allergen of the year" for 2007 by the American

28    Contact Dermatitis Society.
       [13]    https://link.springer.com/article/10.1007%2Fs11869-017-0536-2

First Amended Complaint for Damages, Injunctive Relief and Restitution

1    devices in all interior space owned, rented, or leased by the Centers for Disease Control and

2    Prevention nationwide. As that policy explains,

3        "[v]olatile organic compounds (VOCs) are certain organic chemicals that are
         emitted as gases, often having short- and long-term adverse health effects (see
4        definition in 40 C.F.R. 51.100 (s)). To the fullest **extent** feasible, products (such as
         fragrances) emitting VOCs are prohibited at all times in all interior space owned,
5        rented, or leased by CDC. Moreover, fragranced products and fragrance-emitting
         devices of any kind are prohibited at all times in all interior space owned, rented,
6        or leased by CDC. Fragrance is not appropriate for a professional work
         environment, and the use of some products with fragrance may be detrimental to
7        the health of workers with chemical sensitivities, allergies, asthma, and chronic
         headaches/migraines." [14]

8

9        44.    Similarly, other governmental[15] and private entities, both within the United States

10   and abroad, with high subject matter expertise on the topic have increasing condemned fragrance

11   use in the workplace and/or strongly advocated against it, recognizing the need to adopt clean,

12   fragrance-free environments for citizens and workers. [16]

13

14   **Defendants' Knowing Operation of an Unsafe Facility**

15       45.    Defendants' release of harmful compounds upon the unsuspecting public was

16   hardly an accident. Hotels like that operated by Defendants generally maintain elaborate HVAC

17   systems, designed to maintain optimal environmental conditions for guests/patrons. For those

18   facilities wanting to integrate fragrance into those systems, a number of commercial scent

19

20   [14]   https://www.chemicalsensitivityfoundation.org/pdf/CDC-2009-Indoor-Environmental-Quality-internal-
         policy542.pdf
21   [15]   Representative Plaintiff reserves the right to amend this Complaint to allege a violation of California Health &
         Safety Code §§10895, et seq. (a.k.a., the Cleaning Product Right to Know Act of 2017), to the extent that further
22       discovery reveals the fragranced products released by Defendants constitute "Air care product(s)" (§108952(a)).
         Representative Plaintiff further reserves the right to amend this Complaint to allege a violation of the Safe
23       Drinking Water and Toxic Enforcement Act of 1986 (California Health & Safety Code §§ 25249.5, et seq.), a.k.a.,
         "Proposition 65."
24   [16]   American Lung Association (Sample Fragrance Free Policy for employers at
         http://action.lung.org/site/DocServer/fragrance-free-workplace.pdf); a keyword search for "fragrance" on the Job
25       Accommodation Network (JAN) of the Office of Disability Employment Policy yields no fewer than 130 articles
         on the topic, most of which discussing how to eradicate fragrances from the workplace and using fragrance-free
26       policies as a disability accommodation; see also, discussion of problems with fragrance exposures in the
         workplace (National Institute of Occupational Safety and Health (NIOSH, at
27       https://www.cdc.gov/niosh/topics/indoorenv/ChemicalsOdors.html); Canadian Centre for Occupational Health &
         Safety statement re: fragrance-free workplaces (https://www.ccohs.ca/oshanswers/hsprograms/scent_free.html);
28       Massachusetts Nurses Association fragrance free policy sheet (https://www.massnurses.org/health-and-
         safety/articles/chemical-exposures/p/openItem/1346); see, generally, Environmental Health Network
         (http://ehnca.org/) for references to other fragrance free workplace policies.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

dispersion machines ("SDMs") are available to produce a particular (sometimes even "signature") scent— which promise to enhance the guest experience. Some of these devices are depicted here:



46.    The manufacturers of SDMs and/or their partner organizations produce air supply tubes (depicted below) containing concentrated fragrance for use with SDMs. Assisted by the particular facility's HVAC system, SDMs and air supply tubes deliver a steady stream of toxic compound to pre-selected zones within the facility.

///

///

///

///

///

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

47.     At the Claremont, the defendants aim these toxic compounds directly at guests/patrons as they walk through the Claremont's front door. A rudimentary depiction of the process is shown here:



48.     Vis-à-vis this equipment and process, guests/patrons can be assured a dose of toxins marketed (albeit, ironically) to enhance their hotel experience, but likely to cause skin, respiratory, gastrointestinal, cognitive and other harm.

49.     When used in hotels like the Claremont Club & Spa, the above-depicted equipment and process is often utilized to mask odors such as mold smells (occasionally, even the mold buildup in the HVAC ductwork itself) and to promote a signature scent.

///

///

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

50.     Although there is available a multitude of pre-designed/generic scents offered in the form of fragrances, many of the scents are customized for specific clients to enhance their branding, a few of these commissioned aromas being depicted here:





24K Magic
Inspired by: The W® Hotel
This fragrance has a citrus beginning of bergamot, lemon and lemongrass. The fragrance develops into a floral bouquet of magnol...

BUY NOW

Across The Universe
Step into a crisp, clean world as the therapeutic scent of eucalyptus clears your mind and awakens your space while you bask in...



BUY NOW

Adore
This alluring scent comprised of luxurious white tea which is complemented by delicate white flower notes of jasmine, peony wit...



BUY NOW

51.     And yet, while fragrances like these are widely-touted as tools for enhancing guest experience and maximizing corporate profitability, the public—largely—does not want fragrances in its workplaces, in hotels, on airplanes and in other closed areas.[17] As a result, the injunctive relief sought herein, while primarily sought to protect class members and future guests/patrons of Defendants' business establishment, it satisfies a desire that most people already possess.

52.     Indeed, during the class period, Defendants have received complaints from class members regarding Defendants' use of fragrance, including their health effects on class members. Thus, throughout the limitations period, Defendants, and each of them, knew or had reason to know of the dangerous conditions they were creating and foisting upon class members—and of the heightened risks naturally attendant to such a condition, including the foreseeable risk of emotional and physical harm to class members.

---

[17]    53.1% of Americans supportive of fragrance-free policies for workplaces, a number that rises to over 70% for persons with chemical sensitivity. Among the general population (groups studied in the United States, Australia, United Kingdom and Sweden), if given a choice between staying in a hotel with or without fragranced air, 60.7% would choose a hotel without fragranced air.
(https://www.sciencedirect.com/science/article/pii/S0360132319302148?via%3Dihub#sec7)

# FIRST CAUSE OF ACTION
## NEGLIGENCE

53.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

54.    At all times herein relevant, Defendants, and each of them, jointly and severally, owed a duty of care to Representative Plaintiff and class members to act with reasonable care so as not to put their health and safety in jeopardy, and not cause them fear, apprehension, emotional distress and/or annoyance.

55.    Defendants, and each of them, jointly and severally, did breach their general duty of care to Representative Plaintiff and class members in, but not necessarily limited to, the following ways:

    a.    in failing to adequately warn Representative Plaintiff and class members of the dangers of releasing compounds known to cause annoyance, emotional distress and/or short- or long-term physical damage;

    b.    in intentionally releasing dangerous quantities of toxic chemical compounds known to cause severe health effects to humans and animals from their facility(ies), for profit;

    c.    in failing to exercise reasonable care following complaints made by members of the general public about these noxious compounds and/or their detrimental effects; and/or

    d.    in failing to comply with applicable industry standards, internal safety rules, and state and federal safety laws, rules, regulations and standards.

56.    Representative Plaintiff is informed and believes and, based thereon, alleges that each Defendants' breaches of their respective duties of care were substantial factors, as set forth above, in causing Representative Plaintiff's and class members' harm.

57.    As a direct and proximate result of the above-described willful and unlawful conduct of Defendants, and each of them, Representative Plaintiff and class members sustained damages, as set forth in this Complaint.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

## SECOND CAUSE OF ACTION
### BATTERY

58.     Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

59.     Defendants, and each of them, acted intentionally, maliciously, oppressively and with conscious disregard for the rights and safety of Representative Plaintiff and class members, and each of them, with respect to the events alleged in this Complaint, including, but not limited to the following:

        a.  in failing to adequately warn Representative Plaintiff and class members of the dangers of releasing compounds known to cause annoyance, emotional distress and/or short- or long-term physical damage;

        b.  in intentionally releasing dangerous quantities of toxic chemical compounds known to cause severe health effects to humans and animals from their facility(ies), for profit;

        c.  in failing to exercise reasonable care following complaints made by members of the general public about these noxious compounds and/or their detrimental effects; and/or

        d.  in failing to comply with applicable industry standards, internal safety rules, and state and federal safety laws, rules, regulations and standards.

60.     Defendants, and each of them, committed a battery upon Representative Plaintiff and class members by willfully and unlawfully engaging in the course of conduct described above, which forced Representative Plaintiff and class members to be exposed to the toxic chemicals described herein during the class period.

61.     As a direct and proximate result of the above-described willful and unlawful conduct of Defendants, and each of them, Representative Plaintiff and class members sustained damages, as set forth in this Complaint.

62.     Moreover, in that, at all times herein mentioned, Defendants, and each of them, intended to cause or acted with reckless disregard of the probability of causing injury to Representative Plaintiff and class members, and because these defendants were guilty of oppressive, fraudulent and/or malicious conduct, Representative Plaintiff and class members are

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

1  entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct

2  in the future.

3

4  **THIRD CAUSE OF ACTION**
   **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

5

6  63.    Representative Plaintiff incorporates in this cause of action each and every

7  allegation of the preceding paragraphs, with the same force and effect as though fully set forth

8  herein.

9  64.    Defendants, and each of them, permitted the release of toxic and otherwise harmful

10  chemicals and particulates, with full knowledge of the dangerous nature of said compounds, have

11  permitted same to continue unabated for years (as of the date of the filing of this Complaint) and

12  have failed to otherwise control the release herein-described in a timely manner, with full

13  knowledge of the likely consequences thereof.

14  65.    Defendants, and each of them, permitted the release of toxic and otherwise harmful

15  chemicals and particulates onto and around Representative Plaintiff and class members.

16  66.    Defendants, and each of them, knew or should have known that the result of the

17  above-described acts would cause Representative Plaintiff and class members severe emotional

18  distress, yet performed said acts nonetheless.

19  67.    Moreover, Defendants, and each of them, knew or had reason to know of the toxic

20  quality and condition of their facility, prior to the date(s) of said release(s), and of the heightened

21  risks naturally attendant to such a condition (including the foreseeable risk of harm from toxic

22  chemical and particulate releases as did, in fact, occur in this instance). Despite said actual and/or

23  constructive knowledge, Defendants failed to take adequate preventative or corrective measures

24  to reduce the likelihood of chemical release(s), as occurred in these instances or the harm attendant

25  thereto.

26  68.    As a direct and proximate result of the unlawful conduct of Defendants, and each

27  of them, Representative Plaintiff and class members sustained damages including, but not limited

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

First Amended Complaint for Damages, Injunctive Relief and Restitution

to, severe emotional distress and mental suffering and/or medical, hospital, psychological and related expenses.

### FOURTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

70.    Defendants, and each of them, engaged in extreme and outrageous conduct in permitting the unabated release of toxic and otherwise harmful chemicals and particulates in the vicinity of class members with full knowledge of the dangerous nature of said compounds. Defendants, and each of them, further engaged in extreme and outrageous conduct in knowing of said release and permitting same to continue for continue unabated for years (as of the date of the filing of this Complaint) and/or in failing to otherwise control the release herein-described in a timely manner, all for the sake of profits to Defendants and in blatant disregard of the health and welfare of its guests/patrons and the public at large and the likely health effects to these persons.

71.    Defendants' conduct in failing to maintain safe premises free of injurious hazards was outrageous conduct. A reasonable person would regard the presence of these toxic substances that injured Representative Plaintiff and class members as intolerable, particularly in a facility that serves food and beverages.

72.    Defendants, and each of them, knew of the sub-standard condition of their facility at all relevant times, and of the heightened risks naturally attendant to such a condition (including the foreseeable risk of harm to Representative Plaintiff and class members from the exposure to such compounds, as did, in fact, occur). Despite said actual knowledge, Defendants, and each of them, failed and/or refused to take adequate preventative or corrective measures to reduce the likelihood of such chemical and/or particulate matter releases, and/or of the harm naturally attendant thereto.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

73.    As a direct and proximate result of the unlawful conduct of Defendants, and each of them, Representative Plaintiff and class members sustained damages including, but not limited to, severe emotional distress and mental suffering and/or medical, hospital, psychological and related expenses.

74.    Moreover, in that, at all times herein mentioned, Defendants, and each of them, intended to cause or acted with reckless disregard of the probability of causing injury to Representative Plaintiff and class members, and because Defendants were guilty of oppressive, fraudulent and/or malicious conduct, Representative Plaintiff and class members are entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct in the future.

## FIFTH CAUSE OF ACTION
### AMERICANS WITH DISABILITIES ACT
#### (42 U.S.C. §12182)

75.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

76.    Title III of the Americans with Disabilities Act ("ADA") holds, as a "general rule," that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

77.    As detailed above, the sensitivies of Representative Plaintiff and class members to fragrances substantially limits one or more major life activities (e.g., breathing, concentration), as listed in 29 C.F.R. § 1630.2(i). When Representative Plaintiff and class members are exposed to fragrances, she/they experience symptoms such as migraine headaches, nausea, chest tightness, coughing, loss of voice, a scratchy throat, rhinitis and trouble concentrating. Representative Plaintiff and class members, as a result, avoid certain public areas and cannot sit in proximity to others wearing fragrances.

78.    42 U.S. Code § 12102(4)(D) provides that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

1  Furthermore, 42 U.S. Code § 12102(3)(i) provides that: "[t]he determination of whether an

2  impairment substantially limits a major life activity shall be made without regard to the

3  ameliorative effects of mitigating measures such as— (I) medication, medical supplies... ."

4  79.    Defendants discriminated against Representative Plaintiff and class members by

5  denying them "full and equal enjoyment" and use of the goods, services, facilities, privileges and

6  accommodations of the Claremont during each visit and each incident of deterrence.

7

8  <u>Failure to Make an Altered Facility Accessible</u>

9  80.    Representative Plaintiff alleges on information and belief that the Claremont was

10  modified after January 26, 1993, independently triggering access requirements under the ADA.

11  81.    The ADA also requires that facilities altered in a manner that affects (or could

12  affect) its usability must be made readily accessible to individuals with disabilities to the maximum

13  extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function

14  also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving

15  that area accessible to the maximum extent feasible.

16  82.    Here, Defendants altered the Claremont in a manner that violated the ADA and was

17  not readily accessible to the physically disabled public—including Representative Plaintiff and

18  class members—to the maximum extent feasible.

19

20  <u>Failure to Modify Existing Policies and Procedures</u>

21  83.    The ADA also requires reasonable modifications in policies, practices, or

22  procedures, when necessary to afford such goods, services, facilities, or accommodations to

23  individuals with disabilities, unless the entity can demonstrate that making such modifications

24  would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

25  84.    Here, Defendants violated the ADA by failing to make reasonable modifications in

26  policies, practices, or procedures at the Claremont, when these modifications were necessary to

27  afford (and would not fundamentally alter the nature of) these goods, services, facilities, or

28  accommodations.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Failure to Maintain Accessible Features

85.    Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Claremont that are required to be readily accessible to and usable by persons with disabilities.

86.    Such failure by Defendants to maintain the Claremont in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

87.    As a direct and proximate result of the above-described willful and unlawful conduct of Defendants, and each of them, Representative Plaintiff and class members sustained damages, as set forth in this Complaint. Representative Plaintiff and class members thus seek all relief available under the ADA (i.e., injunctive relief, attorneys' fees and costs) for these aforementioned violations. 42 U.S.C. § 12205.

**SIXTH CAUSE OF ACTION**
**UNRUH CIVIC RIGHTS ACT**
**(CIV. CODE §§ 51, 52)**

88.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

89.    California Civil Code § 51 states, in part, that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their [disability, medical condition, et al.] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

90.    Furthermore, California Civil Code § 51.5 states, in part, that "[n]o business establishment of any kind whatsoever shall discriminate against… any person in this state on account of any [disability, medical condition, et al.]."

91.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

92.    Defendants' aforementioned acts and omissions denied the physically disabled public—including Representative Plaintiff and class members—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

93.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Representative Plaintiff and class members in violation of the Unruh Act.

94.    Representative Plaintiff and class members were damaged by Defendants' wrongful conduct and seek statutory minimum damages of $4,000 for each offense.

95.    Representative Plaintiff and class members also seek to enjoin Defendants, and each of them, from violating the Unruh Act (and ADA), and to recover reasonable attorneys' fees and costs, pursuant to California Civil Code § 52(a).

## SEVENTH CAUSE OF ACTION
## DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES
## (HEALTH AND SAFETY CODE § 19955(A))

96.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

97.    The express purpose of California Health and Safety Code § 19955(a) is to: "insure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of [Government Code § 4450, et seq.]" As § 19955(a) further explains, the definition of "public accommodation or facilities" includes hotels like the Claremont.

98.    Government Code § 4450 explains that "[buildings constructed with public funds] be accessible to and usable by persons with disabilities." California Health and Safety Code § 19955(a), therefore, extends that mandate to privately-funded building projects.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

99.     Moreover, California Health and Safety Code § 19959 states, in part, that "[e]very existing (nonexempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter."

100.     Representative Plaintiff alleges the Claremont is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both). Claremont was, at no time, exempt under Health and Safety Code § 19956.

101.     Defendants' non-compliance with these requirements at the Claremont aggrieved (or potentially aggrieved) Representative Plaintiff and class members with physical disabilities. Accordingly, Representative Plaintiff and class members seek injunctive relief and attorneys' fees, pursuant to Health and Safety Code § 19953.

**EIGHTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
**(BUS. & PROF CODE §§ 17200-17208)**

102.     Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

103.     Representative Plaintiff brings this cause of action on her own behalf and on behalf of class members as well as the general public seeking equitable and statutory relief to stop the misconduct and halt and/or minimize any future toxic chemical and/or particulate matter releases by Defendants, and compel restitution and/or disgorgement of all profits obtained by Defendants through the unfair, unlawful and deceptive business practices described herein.

104.     The knowing conduct of Claremont, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business & Professions Code §§17200-17208. Specifically, Claremont conducted business activities while failing to comply with the legal mandates cited herein. Such violations include, but are not necessarily limited to,

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1    releasing toxic compounds for the purpose of enhancing Claremont's branding and perceived

2    guest/patron satisfaction, but without sufficient regard for these individuals' health and welfare.

3        105.    Moreover, in engaging in these unlawful business practices, Claremont has

4    enjoyed an advantage over its competition and a resultant disadvantage to the public and class

5    members.

6        106.    Claremont's knowing failure to adopt policies in accordance with and/or adhere to

7    these laws, all of which are binding upon and burdensome to Claremont's competitors, engenders

8    an unfair competitive advantage for Claremont, thereby constituting an unfair business practice,

9    as set forth in California Business & Professions Code §§17200-17208.

10        107.    Representative Plaintiff and class members request that this Court enter such orders

11    or judgments as may be necessary to enjoin Claremont from continuing its unfair, unlawful, and/or

12    deceptive practices and to restore to Representative Plaintiff and class members any money

13    Claremont acquired by unfair competition, including restitution and/or restitutionary disgorgement

14    (as provided in Cal. Bus. & Prof. Code §17200, *et seq.*) and for such other relief set forth below.

15        108.    Beginning at an exact date unknown to Representative Plaintiff, Defendants

16    committed the acts set forth herein and proscribed by Business and Professions Code § 17200, *et*

17    *seq.*, by engaging in unfair, unlawful and deceptive business practices which have resulted in the

18    release of various unhealthful chemical substances into the air onto and/or in close proximity to

19    Representative Plaintiff and class members.

20        109.    In light of such incidents, Representative Plaintiff is informed and believes, and

21    thereon alleges, that Defendants have repeatedly released toxic chemicals at the Claremont—

22    substances that have subsequently impacted members of the public to their detriment.

23    Representative Plaintiff is informed and believes, and thereon alleges, that these releases are

24    directly attributable to Defendants' pattern and practice of noncompliance with the various

25    applicable health and safety laws, regulations, rules, and safety standards governing Defendants'

26    handling and control of such chemical substances. Representative Plaintiff is informed and

27    believes, and thereon alleges, that Defendants have obtained profits from this business pattern and

28    practice which they should be ordered to disgorge, and that Defendants have obtained an unfair

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

advantage by failing to incur the costs of compliance that are, or should be, incurred by Defendants' competitors.

110.    Defendants' violations of 42 U.S.C. §§ 12182 and 12183, California Civil Code §§ 51 and 51.5, California Health and Safety Code § 19955, 25249.6, et seq. constitute unlawful and/or fraudulent business practices, as set forth in California Business & Professions Code Sections 17200, et seq.

111.    Public policy mandates that a certain level of corrective/preventative actions must be adopted by handlers of hazardous materials/chemicals in order to protect the health and safety of the public and the environment.

112.    Defendants have clearly established a policy of accepting a certain amount of collateral damage, as represented by the injuries to Representative Plaintiff and class members herein alleged, as incidental to their business operations, rather than accept the alternative costs of full compliance with fair, lawful and honest business practices ordinarily borne by responsible competitors of Defendants and as set forth in legislation and the judicial record.

113.    As a direct and proximate result of the above-described willful and unlawful conduct of Defendants, and each of them, Representative Plaintiff and class members request (a) a judicial determination and declaration of the rights of Representative Plaintiff and class members, and the responsibilities of Defendants, with respect to the damages and injuries caused by the release of chemicals described above; (b) a court order requiring Defendants to remove and forever discontinues use of toxic fragrances at the Claremont and all related facilities so as to prevent future toxic releases.

## NINTH CAUSE OF ACTION
### ATTORNEYS' FEES (CIVIL PROC. CODE §1021.5)

114.    Representative Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL. (510) 891-9800

115.    The reimbursement of costs and fees by Defendants, and each of them, to Representative Plaintiff and class members in responding to the releases at the Claremont of these hazardous chemicals and amounts of particulate matter will confer a significant benefit on the general public.

116.    Representative Plaintiff has expended and will continue to expend considerable costs in this action in order to recover for the costs of remedying the various forms of damage caused by said toxic substances and particulate matter released. Such costs are and will continue to be of public benefit.

117.    Recovery of said costs confers a benefit on the public by ensuring that those who profited from and who are directly at fault for the release of said toxic substances at the Claremont bear the full cost of such releases, and by discouraging future reckless or negligent management and control of other substances and/or facilities.

118.    It is in the interests of justice that Representative Plaintiff's attorneys' fees not be paid out of the recovery for which the Representative Plaintiff prays herein.

## **RELIEF SOUGHT**

**WHEREFORE, the Representative Plaintiff**, on behalf of herself and the proposed Plaintiff classes, prays for judgment and the following specific relief against Defendants, jointly and severally, as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Classes and/or any other appropriate subclasses under California Code of Civil Procedure § 382;

2.    For compensatory and other damages, including, without limitation, damages for medical and related expenses, lost wages, emotional distress, and/or special damages according to proof of each cause action for which such damages are available;

3.    Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

4.      That the Court Order Defendants to pay restitution to the Representative Plaintiff and the class members due to Defendants' unlawful activities, pursuant to California Business and Professions Code §§ 17200-17208;

5.      For injunctive relief, including but not necessarily limited to, an Order (a) requiring Defendants to implement appropriate and sufficient safety procedures, to halt release of toxic substances from its Claremont hotel facility and (b) enjoining Defendants, ordering them to cease and desist from unlawful activities in violation of California Business and Professions Code § 17200, *et seq.*;

6.      Penalties, disgorged profits and attorneys' fees pursuant to Business and Professions Code §17200, *et seq.*;

7.      For punitive and exemplary damages in an amount to be proven at trial;

8.      For reasonable attorneys' fees, pursuant to California Civil Code §1021.5, California Government Code § 12965(b), on each cause of action for which such attorneys' fees are available.

9.      For Interest on the amount of any and all economic losses, at the prevailing legal rate;

10.     For Costs of suit and any and all such other relief as the Court deems just and proper.


**<u>JURY DEMAND</u>**

Representative Plaintiff and class members hereby demand trial by jury on all issues triable of right by jury.


Dated: October 7, 2019                    **SCOTT COLE & ASSOCIATES, APC**


By:      _/s/ Andrew Weaver Esq._____
         Andrew Daniel Weaver, Esq.
         Attorneys for Representative Plaintiff
         and the Plaintiff Classes

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800